IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| OMAR E. ROMERO-ACOSTA<br><br>Plaintiff,<br><br>v.<br><br>BOTTLES, KINDRED SPIRITS INC., et al.<br><br>Defendants. | Case No. 3:23-cv-01163-JAG<br><br><br>Removed from the Puerto Rico Court of First Instance, Case No. GB2023-cv-00268 |

### KSI'S OPPOSITION TO PLAINTIFF'S MOTION FOR
### LEAVE TO PRESENT AMENDED COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW** Kindred Spirits, Inc. ("KSI") through the undersigned counsel and very respectfully opposes Plaintiff's *Motion for Leave to Present Amended Complaint* (the "Motion"), **ECF No. 17**, for the following reasons.

#### I.   PRELIMINARY STATEMENT

Plaintiff's Motion seeks leave to balloon this case from an "expedited" wage claim on behalf of a single employee into a multi-plaintiff collective action, nearly a year-and-a-half after he first filed his Complaint. The Motion offers no grounds for the Court to grant leave to amend, aside from the fact that Plaintiff's attorneys were hired "a few days ago," that they feel that the claims at bar "merited being addressed on behalf of a group of employees," and that leave to amend should be "freely given." **ECF No. 17**, pp. 2-3. Notwithstanding Plaintiff's change of counsel, the Motion is an attempt to skirt the

1

Court's prior scheduling order—which the Court issued precisely in response to Plaintiff's concerns—and which attempt is based on inapplicable sources of law and without any good cause shown.

As will be argued below, the Court should deny the Motion for multiple reasons. First, since Plaintiff himself had sought an expedited litigation track, he cannot now move to amend the Complaint to balloon this case with additional plaintiffs and a collective action to boot. Second, Plaintiff has not shown good cause for his requested relief. Instead, he has hamstrung discovery and now seeks to dissemble his failings as cause for granting the Motion. Third, Plaintiff seeks a trial by jury, a right which he waived over a year ago. Fourth, leave to amend should be denied as futile, as significant portions of the Proposed Amended Complaint, as drafted, do not state claims upon which relief can be granted.

## II.     ARGUMENT

**a. Plaintiff's Motion requests relief contradictory to the expedited schedule granted by the Court in response to his prior concerns. Thus, Plaintiff is judicially estopped from moving for that relief.**

The doctrine of judicial estoppel "prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same proceeding." InterGen N.V. v. Grina, 344 F.3d 124, 144 (1st Cir. 2003).  The doctrine's primary utility is to safeguard the integrity of the courts by preventing parties from improperly manipulating the machinery of the judicial system. Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004). In other words, this doctrine applies when the litigant is "playing fast and loose with the courts."

Patriot Cinemas, Inc. v. Gen. Cinema Corp., 834 F.2d 208, 212 (1st Cir. 1987). The intent of this rule is "to prevent improper use of judicial machinery." New Hampshire v. Maine, 532 U.S. 742, 750 (2001) (citations omitted).

Two requisites must be met for the doctrine to apply. First, "the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive." Alternative Sys. Concepts, Inc., 374 F.3d at 33 (citing Faigin v. Kelly, 184 F.3d 67, 82 (1st Cir. 1999)). Second, the party to be estopped must have succeeded in having the court accept its prior actions. Lydon v. Boston Sand & Gravel Co., 175 F.3d 6, 13 (1st Cir. 1999). Although Courts sometimes examine the fact that the estopped party derived an unfair advantage from the inconsistent position, such an analysis is not a *sine qua non* requisite of judicial estoppel. Alternative Sys. Concepts, Inc., 374 F.3d at 33. This is so, because "it is the court's acceptance of the party's argument, not the benefit flowing from the acceptance, that primarily implicates judicial integrity." Id.; see also New Hampshire, 532 U.S., at 750.

Nearly a year ago, on April 21, 2023, Plaintiff moved to remand this action to state court. **ECF No. 7**. One of Plaintiff's principal arguments for remand was that he had originally filed this action pursuant to Puerto Rico Act No. 2 of 1961 ("Act 2"), which act provided a summary procedure for employment claims. Id. at 5. He posited that maintaining this action in this Court would "transform an expedited action into an onerous process." Id.

Although the Court denied the Motion to Remand, see **ECF No. 12**, it did not dismiss Plaintiff's procedural concerns. On February 23, 2024, the Court issued a Case

3

Management Order "mindful of Plaintiff's desire to prosecute this action through the summary procedure that would govern his claims in state court, which would be more affordable and expedient." **ECF No. 13**. In response to Plaintiff's desire, the Court decided to "enforce an expedited trial schedule" and ordered discovery closed by August 16, 2024. Id. The Court further restricted the information that KSI could discover, in accordance with the same discovery limitations set by Act 2. Id.

Plaintiff got everything he wanted: an expedited litigation track, a determined date to conclude discovery, and the same discovery protections made extensive to this action. Notwithstanding that fact, he has now moved the Court for relief contradictory to the above. In fact, he is now attempting to "transform an expedited action into an onerous process." Given that that is precisely what Plaintiff had sought to avoid and that the Court granted him relief to avoid that same result, Plaintiff cannot now seek contradictory relief. Therefore, he is estopped from pressing his Motion, and it should be denied accordingly.

### b. Plaintiff's Motion employs unsubstantiated arguments that misconstrue the applicable standard and willfully omit his lack of diligence.

Plaintiff bases his Motion on the "freely given" standard provided by Fed. R. Civ. P. 15(a)(2). However, that standard is no longer applicable in this case. As argued above, this Court's Case Management Order set this case on an expedited track in response to Plaintiff's own concerns of expediency. Thus, the Court consciously decided not to provide the parties with an opportunity to amend their pleadings, and set the discovery deadline for August 16, 2024, just four months from now. **ECF No. 13**. If the Court does

not find that Plaintiff's Motion is barred by its Case Management Order, the relief requested therein would require amendments to that order, insofar as the parties would be forced to engage in additional discovery in a litigation that would be much more complicated and protracted than the Act 2 summary proceeding Plaintiff initially asked for and in response to which the Court issued the Case Management Order.

Where a court has entered a scheduling order, the "freely given" standard gives way to a "good cause" standard, which requires the movant to "present a good cause for its delay in moving to amend its complaint." Somascan Inc. v. Phillips Med. Sys. Nederland, B.V., 714 F.3d 62, 64 (1st Cir.2013) (citing Flores-Silva v. McClintock-Hernández, 710 F.3d 1, 3 (1st Cir. 2013)); see also Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998) (stating that considering only Rule 15(a) and its more liberal standard in determining whether amendment is appropriate would make scheduling orders meaningless and ignore the good cause requirement of Rule 16(b)). Although prejudice to the non-movant is a relevant factor, the "dominant criteria" now is the "diligence of the party seeking the amendment." O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 154 (1st Cir. 2004). In other words, the movant must provide "proper explanation" for any delay in amending the complaint. Id. at 155.

Similarly, the Court's established deadlines in the Case Management Order may only be modified upon Plaintiff demonstrating good cause for departing from those deadlines. See Esys Latin Am., Inc. v. Intel Corp., 290 F.R.D. 563, 564 (S.D. Fla. 2013) (providing that scheduling orders control the course of the action and can only be modified on the moving party's showing of good cause). The good cause standard to

amend the Case Management Order also requires the movant to show diligence. See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) ("If [a] party was not diligent, the [good cause] inquiry should end.").

Case law has held that a two-year delay in amending a complaint constitutes "extreme" tardiness. Quaker State Oil Refining Corp. v. Garrity Oil Co., 884 F.2d 1510, 1517-18 (1st Cir. 1989). Further, this Court has held that a year-and-a-half delay in amending the pleadings is inexcusable, absent valid reason. Rivera-Vélez v. P.R. Elec. Power Auth., 201 F.R.D. 289, 291 (D.P.R. 2001). In fact, case law has held that even a delay of slightly over a year, as in the case of reference is "considerable." Grant v. News Group Boston, Inc., 55 F.3d 1, 6 (1st Cir. 1995). The only time case law within this circuit has excused these delays is when, in the interim, the movant obtains knowledge of "previously unknown facts which altered the shape of his case." Tiernan v. Blyth, Eastman, Dillon & Co., 719 F.2d 1, 4 (1st Cir. 1983) (citing Hayes v. New England Millwork Distributors, Inc., 602 F.2d 15, 20 (1st Cir.1979)). That is not the case here, a fact readily apparent from the Motion.

More importantly, Plaintiff cannot claim that he has been diligent in prosecuting his action. For starters, and as will be discussed further below, in the year-plus of litigation, Plaintiff has not even served process on one of the two named defendants in his original complaint, i.e., Defendant Richard Gonsalves ("Gonsalves"). Second, just three days after the Court's Case Management Order, his attorney moved for leave to withdraw. **ECF No. 14.** This left proceedings at a standstill.

Although Plaintiff now informs the Court in his Motion that this case is still at the pleadings stage, he conveniently omits that he has failed to proceed with discovery, having already been required to do so by KSI. On February 2, 2024, the undersigned emailed Plaintiff's counsel to schedule his client's deposition, providing suggested dates. **Exhibit A**. That email went unanswered. Consequently, on February 23, 2024, KSI served a Notice of Deposition *Duces Tecum* (the "Notice") on Plaintiff, noticing his deposition for April 10, 2024. **Exhibit B**. Nonetheless, Plaintiff remained incommunicado and instead had his counsel move for leave to withdraw his appearance. See **ECF No. 14**. Although the Court correctly denied that motion just days later, see **ECF No. 15**, the undersigned never heard back from Plaintiff's counsel.

On April 8, 2024—two days before his deposition and a month-and-a-half after serving the Notice—the undersigned followed up with Plaintiff's counsel, because they had not heard back from him and because Plaintiff had not produced the documents requested in the Notice. On April 9, 2024—now on the eve of Plaintiff's deposition—his attorney used his pending resignation as an excuse to cancel his client's deposition. Notwithstanding, Plaintiff's attorney did not provide alternate dates to reschedule the deposition, nor has Plaintiff answered or in any way responded to the request for production of documents sent two months ago with the Notice. Instead, Plaintiff has used the fact that he has held discovery hostage as an excuse to completely change the nature of this action.

Plaintiff has not been diligent in this action, and the Motion's efforts to dissemble this lack of diligence are indicative of bad faith. Both are grounds to deny the Motion.

7

### c. Plaintiff is attempting to revive a long-waived jury demand with his Motion and his Proposed Amended Complaint.

The Proposed Amended Complaint includes a jury demand for the very first time in this litigation. However, Plaintiff had previously waived the right to a trial by jury by failing to timely serve a jury demand. And Plaintiff cannot revive this right by bootstrapping additional plaintiffs to this action.

In removed actions, such as the one at bar, a jury demand must be served within fourteen days of the notice of removal. See Fed. R. Civ. P. 81(c)(3). KSI removed this action to this Court on April 6, 2023—more than a year before the Motion and the Proposed Amended Complaint. Thus, Plaintiff had until April 20, 2023 to serve a jury demand. He never did and cannot use the Proposed Amended Complaint as an excuse to renew his waived right to a jury trial.

"[W]hen a party has waived the right to a trial with respect to the original complaint and answer by failing to make a timely demand, amendments of the pleadings that do not change the issues do not revive this right." W. Geophysical Co. of Am. v. Bolt Assocs., Inc., 440 F.2d 765, 769 (2d Cir. 1971). If the "amended complaint addressed the same 'general area of dispute' as the original complaint, its filing d[oes] not revive plaintiffs' right to a jury trial." Chen v. Hunan Manor Enter., Inc., 340 F.R.D. 85, 88 (S.D.N.Y. 2022).

If a new party is joined by the amended complaint, his or her joinder does not by itself create a new issue of fact. Daniel Int'l Corp. v. Fischbach & Moore, Inc., 916 F.2d 1061, 1063-1064 (5th Cir. 1990). It is only when the new plaintiffs' claims involve separate

8

actions with distinct factual issues that a party may revive a waived jury demand. See LaMarca v. Turner, 995 F.2d 1526, 1546-47 (11th Cir. 1993). However, as Plaintiff himself admits, that is not the case here.

Plaintiff's Motion states that "the issues involved in the original litigation [. . .] are the same as those now being requested to be brought as a Collective Class Complaint under the FLSA." **ECF No. 17**, p. 3., Plaintiff also claims that the five other proposed plaintiffs' situation "mirror" his own. Id. Since Plaintiff represents that there are no new issues in the Proposed Amended Complaint, the Court should not allow Plaintiff to revive his waived jury demand at this stage of the proceedings.

### d. Granting leave to amend would be futile.

Leave to amend a complaint should be denied, where the proposed amendments are an exercise in futility. See Rife v. One W. Bank, F.S.B., 873 F.3d 17, 20-21 (1st Cir. 2017). An amended complaint is futile when it would "fail to state a claim upon which relief could be granted." Id. (citing Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996)). That is the case here for several reasons.[1]

### i. *First*, the Proposed Amended Complaint is a prototypical "shotgun pleading."

A shotgun pleading is a kind of umbrella complaint that does not separate each cause of action into distinct counts. Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1322-23 (11th Cir. 2015). "[I]n one way or another, [shogun pleadings fail] to give

---

[1] Were the Court to grant leave to amend, KSI reserves the right to renew these arguments and raise any other arguments for failure to state a claim in response to the amended complaint or any other amended pleading so allowed by this Court.

the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Id. at 1323. Shotgun pleadings are "unacceptable." Cramer v. Florida, 117 F.3d 1258, 1263 (11th Cir. 1997) (collecting cases). They "exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources." Id. at 1263. Thus, it is a procedural imperative that litigants "present each claim for relief in a separate count." Anderson v. Dist. Bd. of Tr., 77 F.3d 364, 366-67 (11th Cir. 1996).

Multi-plaintiff claims, like those asserted in the Proposed Amended Complaint, are also subject to this "shotgun pleading" doctrine. Where a complaint "purports to combine in one count multiple claims of eight plaintiffs," a court is well within its discretion in disregarding that complaint. Davis v. Coca-Cola Bottling Co., 516 F.3d 955, 984 (11th Cir. 2008) (quoting Anderson, 77 F.3d en la pág. 366); see also Confederación Hípica of P.R., Inc., v. Tote Maritime PR, LLC, No. 3:20-cv-448-J-34JRK, 2020 U.S. Dist. LEXIS 77947, at *4-*5 (M.D. Fla. May 4, 2020) (striking a "shotgun pleading" *sua sponte* that stated multiple counts, each composed of different causes of action, among other defects).

A collective action under the FLSA can also constitute an "unacceptable" shotgun pleading. In Biller v. Cafe Luna of Naples, Inc., No. 2:14-cv-659-FtM-29MRM, 2016 U.S. Dist. LEXIS 12180 (M.D. Fla. Feb. 2, 2016) the plaintiff agglomerated all of her claims against the Defendants "indiscriminately," to then make "vague allegations" about working overtime hours (without mentioning any hours), about not being paid for

10

overtime, and about not being paid "the applicable minimum wage" (without providing any details about this alleged shortfall). Id. at *9. With these allegations, the Court was left bereft of any information "to determine, in essence, who did what." Id. at *9. Therefore, it dismissed the complaint before it. Id. at *10. The same result follows with the Proposed Amended Complaint.

The Proposed Amended Complaint does not state at what times Plaintiff the additional purported plaintiffs worked for KSI. It does not allege how many overtime hours they worked. It does not state how KSI failed to pay them overtime, nor does it even say how KSI failed to provide each of them with a minimum wage.

The Proposed Amended Complaint's counts are buttressed by skeletal allegations and murky accusations. Count 1 is predicated on a generalized allegation that "Bottles failed to pay minimum and overtime wages, illegally retained compensation, failed to make required disclosures and improperly split tips with non-eligible employees." **ECF No. 17-1**, p. 14, ¶ 5.2. This generalized allegation is not adapted to the specific circumstance of each of the employees. Count 2 alleges that KSI "improperly retained 'service charge' amounts" and that it did not "make overtime payments." **ECF No. 17-1**, p. 15, ¶ 6.3. The Proposed Amended Complaint is not just bundling multiple plaintiff's claims, but different claims, each of a separate nature, i.e., multiples claims for improper retainment of wages are bundled with numerous claims for failure to pay minimum wage and with several claims for failure to pay overtime, all of which reference a multiplicity of separate legal sources in parallel. This is exactly what a "shotgun pleading" is.

In sum, the Proposed Amended Complaint is a mishmash of legal theories and factual issues that serve to confuse the controversies before this Court. Taking this mishmash together with Plaintiff's desire to file a collective action, permitting the Proposed Amended Complaint would balloon the complexity of this case and the resources that would be expended by the Court. Therefore, the Proposed Amended Complaint runs afoul of applicable pleading standards, which makes the proposed amendments futile, and is grounds for denying the Motion.

> ii. *Second*, **the Proposed Amended Complaint fails to state minimum wage and overtime claims under the FLSA.**

To see if a pleading states a plausible claim for the relief, this Court begins by taking as true the "well-pleaded factual allegations in the complaint." Colón-Andino v. Toledo-Dávila, 634 F. Supp. 2d 220, 229 (D.P.R. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). This Court "need not credit . . . 'bald assertions and unsupportable conclusions' . . . [or] . . . legal conclusion[s] couched as a factual allegation.'" Colón-Andino, 634 F. Supp. 2d at 229 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Instead, "courts may first separate out merely conclusory pleadings, and then focus upon the remaining well-pleaded factual allegations to determine if they plausibly give rise to an entitlement to relief." Ocasio-Hernández v. Fortuño-Burset, 639 F. Supp. 2d 217, 221 (D.P.R. 2009) (citing Iqbal, 556 U.S. at 664).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Twombly, 550 U.S. at 555. Thus, the complaint

must show—through concrete facts and not mere recitations or inferences—that "the pleader is entitled to relief." Iqbal, 556 U.S. at 677-78 (quoting Fed. R. Civ. P. 8(a)(2)).

As a threshold issue, the FLSA does not cover or consider claims for "gap time," i.e. unpaid wages that "fall between the minimum wage and the overtime provisions of the FLSA." Conner v. Cleveland Cnty., 22 F.4th 412, 421 (4th Cir. 2022) (quoting Davis v. Abington Mem'l Hosp., 765 F.3d 236, 243 (3d Cir. 2014). In other words, the FLSA does not cover situations where employees "are still being paid a minimum wage when their salaries are averaged across their actual time work." Conner, 22 F.4th at 421 (quoting Davis, 765 F.3d at 243-44). The FLSA only provides causes of action for failure to pay the statutory minimum wage or failure to pay overtime. 29 U.S.C. § 216(b) (quoting 29 U.S.C. §§ 206 & 207).

In order to state a claim under the FLSA in either case, a plaintiff must allege three basic elements: (1) he or she was employed by the defendant; (2) the work involved interstate activity, and (3) the plaintiff "performed work for which [he or she was] under-compensated." Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 43 (1st Cir. 2013) (quoting Pruell v. Caritas Christi, 678 F.3d 10, 12 (1st Cir. 2012)). In an overtime claim, the plaintiff must also demonstrate that he or she was employed "for a workweek longer than forty hours" and that, for all hours worked in excess of forty hours, he or she was not compensated "at a rate not less than one and one-half times the regular rate." Manning, 725 F.3d at 43 (quoting 29 U.S.C. § 207(a)(1)).

The Proposed Amended Complaint fails with the above. For starters, there are no allegations whatsoever as to whether the work here in question involved interstate

13

activity. The word "interstate" is wholly absent from the Proposed Amended Complaint and there is absolutely no allegation to the effect that KSI is an employer covered by the FLSA.

That being said, the allegations on their merits are barebone and insufficient. Plaintiffs never once provide any details about the amount of work they performed or the amount of compensation they received for any such work. Thus, the Court is in no position to infer whether the purported plaintiffs are complaining about receiving less than $7.25 per hour worked or whether they are merely dissatisfied about not receiving the amount of wages they claim to have been contractually entitled to receive. The dearth of allegations to that effect is so glaring in the Proposed Amended Complaint that the only time it uses dollar signs is to mention a fine imposed on KSI eight years ago and a penalty for tardiness KSI allegedly imposed.[2] **ECF No. 17-1**, p. 10 ¶ 4.13 & p. 12 ¶ 4.28.

The overtime allegations also suffer from these same shortfalls. The Proposed Amended Complaint sticks to conclusory allegations that, in failing to remit the totality of the "service charge" to Plaintiff and his colleagues, it "deprived them of other required compensation for overtime pay." Id. at p. 6 ¶¶ 3.8 & 3.9. However, the Proposed Amended Complaint is absolutely silent as to whether Plaintiff or his coworkers worked in excess of forty (40) hours or whether any overtime pay failed to comply with the FLSA. Complaints more specific than the Proposed Amended Complaint have been deemed

---

[2] The Proposed Amended Complaint does not even say whether Plaintiff or any of his five colleagues were ever subjected to that penalty, much less precise the date of any such instance.

insufficient by the First Circuit. See Pruell v. Caritas Christi, 678 F.3d 10, 15 (1st Cir. 2012). There is no reason for this Court to permit a pleading that is even vaguer.

> ### iii. *Third*, the new state law claims in the Proposed Amended Complaint are all time-barred.

Puerto Rico Act No. 180 of 1998 ("Act 180"), P.R. Laws Ann. tit. 29, § 250 *et seq.*, provides a catch-all statute of limitations for employees' wage claims. There are two applicable statutes of limitations. In the case of a current employee, that employee may file suit for unpaid wages corresponding to the three years immediately preceding his or her complaint. P.R. Laws Ann. tit. 29, § 250j(b). For former employees, that employee has one (1) year from the termination of his employment to file suit for any unpaid wages. P.R. Laws Ann. tit. 29, § 250j(a).[3]

The Proposed Amended Complaint conveniently leaves out the dates on which all of the proposed plaintiffs ceased working for KSI. Notwithstanding, attached hereto as **Exhibit C** is a statement under penalty of perjury by Gonsalves, president of KSI, attesting to the dates of their separations of employment. Having reviewed KSI's employment records, Gonsalves avers that these employees ceased working with KSI on the following dates:

> **Etienne Pomales-Rosario**: May 31, 2020
> **Dianne Viego**: Dec. 31, 2021
> **Aileen Rosado-Ferrer**: February 13, 2022
> **Héctor Batista-Figueroa**: February 5, 2023
> **Carlos Pérez-Rivera**: February 5, 2023

---

[3] Act 180 was amended by Puerto Rico Act No. 41 of 2022 ("Act 41") to increase the statute of limitations from one (1) to three (3) years. However, this Court declared Act 41 null and void *ab initio*, meaning that this increase never took effect. See Fin. Oversight & Mgmt. Bd. For P.R. v. Pierluisi-Urrutia (In re Fin. Oversight & Mgmt. Bd. for P.R.), 650 B.R. 334, 359 (D.P.R. 2023), aff'd, 77 F.4th 49 (1st Cir. 2023).

15

**Exhibit C**, ¶¶ 5a-5e.

All five additional proposed plaintiffs ceased working for KSI more than a year prior to the Motion and the Proposed Amended Complaint, both dated **April 12, 2024**, meaning that their state law claims are all time-barred. Further, the collective action in the Proposed Amended Complaint cannot "relate back" to the date of the original Complaint as a matter of law.

In Rodríguez Rosado v. SYNTEX (F.P.), Inc., 160 P.R. Dec. 364 (2003), the Puerto Rico Supreme Court contended with a collective action for unpaid wages under state law. The original complaint was amended several times, to join several additional plaintiffs. As part of an ongoing discovery dispute, the Puerto Rico Supreme Court decided whether the claims of certain plaintiffs who had opted into the collective action after the date of the original complaint were time-barred.

In describing the nature of a collective action under state law, the Puerto Rico Supreme Court held that a collective action is simply an invitation to the employee to take part in a suit, and he is not required to appear. Id. at 390. Therefore, the statute of limitations to file claims for unpaid wages is not tolled with the filing of a representative action. Id. at 391. The statute of limitations keeps running for those employees who did not opt-in to the original complaint. Id. Therefore, the claims of a plaintiff who opts into the collective action do not relate back to the date of the original complaint, which did not have the effect of tolling the statute of limitations, since the opt-in plaintiffs were not part of the original claim. Id. at 393.

16

That being the case, the state law claims for these additional plaintiffs are untimely, and the Motion should be rejected as futile.

### iv. *Fourth*, the Proposed Amended Complaint does not state valid state law claims.

Without delving into any specifics of these laws, the Proposed Amended Complaint claims that KSI violated Act 180 along with Puerto Rico Act No. 17 of 1931 ("Act 17"), P.R. Laws Ann. tit. 29, § 175 et seq., and Puerto Rico Act No. 379 of 1948 ("Act 379"), P.R. Laws Ann. tit. 29, § 271. The Proposed Amended Complaint fails to state claims under any of these dispositions.

For starters, Act 17 does not provide a private cause of action. Sections 1 and 5 of Act 17 state that breaches of Act 17 are subject to Section 8. See P.R. Laws Ann. tit. 29, § 171 & 175. And Section 8 does not furnish an employee with a private cause of action. See P.R. Laws Ann. tit. 29, § 178. In fact, nothing in the text of Act 17 expressly authorizes an employee to file suit for any breach thereof, and the Proposed Amended Complaint is absent of any reference to any other source of law that would provide a cause of action for any breach of Act 17.

Second, Act 379 "largely mirrors the compensation regulations of the FLSA, and both laws are analyzed under the same framework." Vega-Colón v. Colomer & Suárez San Juan, Inc., No. 18-1360 (MDM), 2020 U.S. Dist. LEXIS 140846, at *58 (D.P.R. Aug. 6, 2020) (citing Velázquez-Fernández v. NCE Foods, Inc., 405 F. Supp. 2d 179, 195-96 (D.P.R. 2005)). Because the Proposed Amended Complaint's FLSA claims are insufficient, that is also the case for its Act 379 claims. Vega-Colón, 2020 U.S. Dist. LEXIS 140846 at *58.

17

Finally, and where relevant, Act 180 provides non-exempt employees with a statutory right to paid vacation and sick leave. See P.R. Laws Ann. tit. 29, § 250d. Vacation and sick leave shall be paid on the basis of the regular hourly rate on the date on which leave accrued. P.R. Laws Ann. tit. 29, § 250d(d). Because that the Proposed Amended Complaint provides no allegations as to the rate of pay at which vacation and sick leave were paid and whether that rate was the correct rate at that time, it also fails to state a claim under Act 180.

> **v.** *Fifth*, **the Proposed Amended Complaint ignores that Gonsalves has never been served with process.**

In both the original Complaint and the Proposed Amended Complaints, KSI and Gonsalves in his individual capacity are the named defendants. Notwithstanding, Plaintiffs can no longer state a claim against Gonsalves, given that he was never served with process, either before or after this action was removed.

Attached to the Notice of Removal are the Complaint, its attachments, and the summons served on KSI. See **ECF No. 1-1** (certified translation at **ECF No. 9-1**). The Court will note that the only summons with a name made out were those directed to "Bottles, Kindred Spirits, Inc.," which KSI acknowledges having received. **ECF No. 1-1**, p. 12 (certified translation at **ECF No. 9-1**, p. 12). In other words, the docket is absent of any evidence that Plaintiff duly served process on Gonsalves, and he is impeded from doing so now in this same action.

Under the Puerto Rico Rules of Civil Procedure, a plaintiff has one-hundred-twenty (120) days to serve process, whereas the Federal Rules of Civil Procedure provide

18

ninety (90) days to do so. See respectively, P.R. Laws Ann. tit. 32 app'x V, R. 4 & Fed. R. Civ. P. 4(m). It has been over a year since KSI removed this action to this Court. In that time, Plaintiff has made no attempt at serving Gonsalves.

Whether under Puerto Rico or Federal Rules, the party's failure to timely serve process warrants dismissal. Under Puerto Rico law, a court may not extend the time to serve process, whereas under Federal law, dismissal is "mandatory" unless the plaintiff shows good cause for his or her failure to serve process. González Mercado v. Rodríguez Becerra, 200 P.R. Dec. 637, 649 (2018) cf. Fed. R. Civ. P. 4(m).

Were the Court able to extend the timeframe to serve process on Gonsalves, there is no way for it to conclude that Plaintiff has shown good cause for the failure to timely serve him. Instead, in the year since removal, Plaintiff resorted to filing a meritless motion to remand, substituted counsel, and attempted to reforge his "expedited action" into a multi-party representative action. And a pending motion to remand is not good cause either. In fact, multiple courts have dismissed complaints for failure to serve process, where a motion to remand had been pending. See, e.g., Anderson v. Acuity, a Mutual Ins. Co., No. 1:23-cv-01046-JDB-jay, 2023 U.S. Dist. LEXIS 194650, at *4-5 (W.D. Tenn. Aug. 30, 2023); Hatton v. Nationwide Mut. Ins. Co., No. 5:19-cv-020-JMH, 2019 U.S. Dist. LEXIS 118627, at *6-*9 (E.D. Ky. July 17, 2019); Combs v. Shapiro & Burson LLP, No. GJH-15-846, 2016 U.S. Dist. LEXIS 33761, at *15-16 (D. Md. Mar. 14, 2016).

Because the docket is absent of any justification by Plaintiff for his failure to serve Gonsalves, he cannot now renew his claims against Gonsalves with the Proposed Amended Complaint.

### III. CONCLUSION AND PRAYER

**WHEREFORE**, the Court should deny Plaintiff's Motion and order him to abide by the same expedited timetable which he requested.

**RESPECTFULLY SUBMITTED**, in Guaynabo, Puerto Rico, this 19th day of April 2024.

**CERTIFICATE OF SERVICE**: On this date, we filed the foregoing document using the Court's CM/ECF System, which will automatically serve all counsel of record with a true and faithful copy thereof.

*s/ Joaquín Monserrate-Matienzo*
Joaquín Monserrate-Matienzo
USDC-PR No. 114,501
Email: jmonserrate@msglawpr.com

*s/ Miguel Simonet-Sierra*
Miguel Simonet-Sierra
USDC-PR No. 210,102
Email: msimonet@msglawpr.com

**MONSERRATE SIMONET & GIERBOLINI, LLC**
101 San Patricio Ave., Suite 1120
Guaynabo, PR 00968
Tel.: 787 620-5300 | Fax: 787-620-5305